Constitutional. In these proceedings, he seeks relief from that unconstitutional sentence, which is also five years in excess of the statutory maximum. There really is no dispute that Mr. Slusser's 1999 Tennessee conviction for Class C aggravated assault does not qualify under the Armed Career Criminal Act's force clause. We know this because Class C aggravated assault under Tennessee law encompasses three different crimes, two of which do not have the requisite element of force. The dispute in this case centers on two different questions. The first is whether Mr. Slusser has waived his right to bring this claim. The second is whether he has shown that he's entitled to relief, whether he's proved that by preponderance of the evidence that he's entitled to relief. I will The government, in its brief, cites a number of cases in support of the notion that the waiver in this case is enforceable. However, it does not cite this court's published decision in Carruthers, the portion of which that deals with the question whether an appellate waiver is enforceable when the sentence exceeds the statutory maximum is still good law, even after Cradler's decision yesterday. The government doesn't cite Carruthers. Instead, really, the only case it cites that actually deals with a case that involves a sentence or a claim that the sentence exceeds the statutory maximum is Cox. And we're all familiar with that case, obviously, since Judge Cook, Judge Donald, you were on the panel. Mr. Cox is my client, and Mr. McLaurin represented the government in that case. In Cox, as Mr. Slusser explains in his brief, the panel didn't actually deal with the published decision in Carruthers. It's not mentioned at all. The second thing is, all of the decisions that it cites in support of the notion that the waiver is enforceable don't actually involve a claim that the sentence exceeds the statutory maximum, and they don't involve claims in which the sentence is based on an unconstitutional criteria, which in this case would be a because it is vague. Otherwise, the vast weight of authority, as Carruthers recognizes, that all the other circuits that have considered this question have said that an appellate waiver and also, likewise, a post-conviction waiver, 2255 waiver, it's not enforceable when the sentence, when the claim is that the sentence exceeds the statutory maximum and or the sentence is based on unconstitutional criteria. Based on that premise, then, are you saying that this court would not have to consider even whether or not the waiver was knowing and involuntary at the time it was made, that you would simply look beyond or disregard that under a circumstance such as this? Yes. Our position would be that in these circumstances, those kinds of inquiries are not part of the equation. It sort of operates as an exception to the rule that waivers are generally enforceable, even when we're talking about the waiver of ordinary constitutional rights, such as the procedural rights that you waive every time you plead guilty, or any other, for example, in all those cases where Booker or the claim was that I didn't knowingly and intelligently waive my right to be sentenced under the advisory guidelines. Those are all questions that did not circumstances, which is that the sentence exceeds the statutory maximum. And just to sort of add a little bit more to this idea that this is an exceptional circumstance, what's happened is the claim is that Mr. Susser is currently subject to a sentence that exceeds the maximum that Congress has set by law. In Hill v. Masters, and I know I didn't cite this in my briefs, but in Hill v. Masters, the court recognized that there would be a separation of a sentence that exceeds the maximum set by Congress. So it's really just sort of a package that it operates as an exception when the sentence, the claim is that the sentence exceeds the statutory maximum. I was going to just ask, okay, you say the reason we find ourselves in this position is because one of his offenses does not meet the criteria under the law. Obviously the state takes a different position. So what is your case that best supports your argument that it's not a qualifying one? So now we're talking about the merits, the question whether his aggravated assault conviction qualifies. You started off saying that it didn't. And that's why he's serving five years more than the statutory max. That's right. So actually the government really doesn't dispute that as the statute was written in 1999, that Class C aggravated assault encompasses three crimes, two of which do not qualify under the Force Clause. The court has held that it qualifies under A-1, which would qualify under the Force Clause. But there is case law, and it's cited in my brief, each one is different, that the subsection B and subsection C do not actually have the requisite element of force. What the government is arguing is that Mr. Schleser has not met his burden of showing that the district court actually relied on the residual clause back when he was sentenced in 2005, I believe, as a historical fact. And the answer to that question is, well, yes, he has met that burden. That burden, by the way, comes from, as of now, comes from this court's decision in Potter where it held, as the Department of Justice urged it to do, that the burden is on the movement in a 2255 case to show that the district court actually and solely relied on the residual clause when it counted that conviction, which is the ACCA-dependent conviction under the residual clause. Mr. Schleser actually meets that strict burden because of the record in this court. That judgment only says that he was convicted of Class C aggravated assault, and it doesn't tell us which one. And under the categorical approach, which applies even when we are at this stage, even when we're looking at that historical fact, under the categorical approach, the only way the district court could have counted that conviction was to assume that it was the least of the convictions, the ones that don't count under the force clause, and qualify it under the residual clause. So that's how he meets that first part of the burden. Potter actually doesn't go to the next stage because in Potter it held that Mr. Potter was not able to meet the burden of showing that the district court relied solely on the residual clause because there was nothing at all. He was clearly convicted of, well, according to the court, he was convicted of generic burglary, and the Georgia burglary has always been generic burglary, and there's nothing to say otherwise. So the facts were a little bit different there, and the court didn't go to the next step. The next step is to show prejudice, and Mr. Schlosser also was able to show that he was prejudiced by the district court's reliance on the residual clause when it counted that conviction. And the reason he can show prejudice is that the same Shepard documents do not allow this court to decide that he was convicted of anything other than the two non-qualifying offenses. So Mr. Schlosser hasn't... I'm encouraged that. I've searched your brief. We started with the Cox being a case that is seemingly on all fours, unpublished, granted, and you say Carruthers is the better case, and I'm searching your brief and the government's brief, and I don't see that in your index. Carruthers. It's not the case you thought was crucial? Yes. Yes. So did you cite it to the court? I don't see it in your brief, nor the state, which didn't seem to respond to it. Well, I can tell you this. I cite Curtis, and Curtis... So now you want us to think about that one? Well, Curtis relies on Carruthers, and I believe, Judge Cook, you were on that panel, and in that case, the court said that the waiver in a 2255 Johnson case was unenforceable and cited Carruthers for that proposition. Okay. And so I would say that in that way, Carruthers was cited, but... What is it in the Curtis citation? Is that it? I don't... Anyway, I stopped you because I'm looking for that, and I just, I didn't see it. So on page two, it might be that I, that the index doesn't properly capture all the cases, but on page two of my reply brief, I start with a citation to Carruthers, and then cite all the other cases that also say the same thing. My apologies if I didn't get it in the index. That's okay. I was just trying to stay with you, and I started there. So we were back at Judge Donald's question, which is basically about the merits, and I, the way to really think about this is to think about it in those two parts, which has to do with the historical fact of what happened at the original sentencing, and then the question whether there's prejudice today. And Mr. Slusser, I would end with this now, is that Mr. Slusser has actually, with the same Shepard documents, proved his burden in both inquiries. And with that, if, unless you have any further questions, I will sit down. You've reserved some time. Yes, yes. All right. Thank you, counsel. May it please the court. My name is Luke McLaurin, and I'm here on behalf of the United States. The denial of Mr. Slusser's 2255 motion should be affirmed for two separate reasons. First, Mr. Slusser waived his right to file the 2255 motion in his plea agreement. And second, he has failed to meet his 2255 burden of showing that his armed career criminal classification rests solely on the residual clause. Now, I want to turn to the waiver issue first. For a moment, yeah, because you heard counsel argue that the Carruthers slash Curtis holds differently with respect to the waiver. Yes, and unfortunately, counsel's statements there mischaracterized those cases a little bit. First, I'll begin with Curtis. Curtis didn't actually address this issue. What Curtis did is it noted that after briefing in the case, the en banc court had decided stit. It noted that the government's brief had made a waiver argument. Nobody had talked about stit. And so what the Curtis panel did is it noted the party's argument, didn't express any comment on the party's to the district court in light of stit. What then subsequently happened in the case is in light of stit, the government did waive its reliance upon the waiver argument, and that case has been resolved in Mr. Curtis's favor. Stit is back on the table. Stit is back on the table. The Carruthers case is out there, and I want to respond. The reason we didn't respond to the Carruthers case is because it was cited in the reply brief, so we weren't allowed to file something responding to it, but I'm happy to respond to it now. We think that Cox is really the controlling case here. It's a recent case, it's unpublished, it is directly on point. And we do not think that Cox was wrong. In fact, I would note that the Cox sought cert recently, and in March, the Supreme Court denied his petition for cert. And I think it did so for good reason, because Cox was arguing for some sort of exception that not even the Sixth Circuit has recognized. They have stated that Carruthers stands for the proposition that a challenge to an armed criminal enhancement is an exception to the enforceability of appeal waivers. That is not true. What Carruthers specifically said is that it recognized an exception to appeal waivers, that they would not enforce appeal waivers when people were making claims that their sentence exceeded the statutory maximum. However, Carruthers expressly refused to decide the question of whether a challenge to one's armed career criminal classification constituted a challenge along the lines that a sentence was above the statutory maximum. But in this case, isn't that expressly Mr. Sluss's argument? And that the sentence is over the statutory maximum? His challenge is that he was improperly sentenced as an armed career criminal. Put him in a position to be sentenced at this level of 15 years instead of 10. Well, the reason is because the Court in Carruthers specifically said, look, it's possible that these kinds of challenges aren't really raising challenges to the statutory maximum. Because what may be going on here is that we don't have two offenses. We just have one offense with a recidivism enhancement. And it said if that is true, then the statutory maximum for purposes of the waiver analysis is the lifetime statutory maximum. Now, the Court in Carruthers said we haven't decided that question of whether we have two offenses or not. That was in 2006. Five years later, in 2011, in the United States, McMurray, which is at 653 F3, 367, 2011 case, published decision, the Court expressly said, no, no, no. These are, in fact, not two separate offenses. The ACCA is a recidivism enhancement. Then there have been several unpublished cases since Carruthers and since McMurray saying, look, Carruthers said this, but then now we have McMurray providing us guidance. And if you look at the cases of, say, United States v. Amos, an unpublished decision, 604 F Appendix 418, a 2015 decision from this Court, they looked at that and they said, look, this would seem to indicate that what Carruthers said about this issue of whether our criminal challenges are not enforceable, it would seem to indicate that those things are enforceable. But nevertheless, in every one of those cases, out of an abundance of caution, the courts have almost always jumped right and decided the merits and not addressed the enforceability of the waivers. But this is an issue that has not been decided. Carruthers didn't decide it. And the Court has recognized that it's not clear that these kinds of challenges really are an exception to the enforceability. And it would make sense, because if you think about it, when you are looking at waiving 2255 rights, one of the very types of things that occurred in the prior proceeding, it's only about addressing those most fundamental errors. So when a defendant, in context of negotiating a plea, decides that they are waiving their 2255 rights, they're deciding precisely that they are going to, you know, bear the risk that there might be a favorable change of law in their favor. All the cases from other circuits where waivers have been enforced on the basis of the fact that the sentence was above the statutory maximum involve situations where the sentence imposed was well above the sentencing range that everybody understood to be applicable at the time based on the statutes, right? A sentencing range that had been set out as you committed a mail fraud offense and your statutory maximum is 20 years. Set out the plea agreement and the sentence is like 25 years. Everyone said, of course, you shouldn't have enforced that waiver. Because at the time he was negotiating the plea, everybody was operating under the assumption of what a certain range was. There was no quid pro quo. Exactly. And in this case, Mr. Slusser himself agreed that he was an armchair criminal. He agreed that he faced a sentencing range of 15 up to life imprisonment. So there was really no surprise when he received the sentence he received in this case. In any event, if we were, and I would also note that Cox, you know, this court's decision is squarely on point, is, I think, factually analogous in every way. We do acknowledge this is an unpublished decision, but we urge the and we don't think that there's any published prior decisions that undermine it. Again, Crothers is not to the contrary. That said, we're happy to turn to the merits argument, or as I like to call it, the burden argument. Because really what the question is, is who has the burden here? And this court recently answered that question very clearly. It said that when you are raising a Johnson claim into 2255, you as the petitioner have the burden to show that your actually based on the residual clause. Because if it was based on something else, you haven't suffered any injury under Johnson. And that's consistent with well-established rules that this court has employed for over 50 years. But hasn't Mr. Slusser shown that his Tennessee aggravated assault conviction could only have been counted under the residual clause? Not at all, Your Honor. He has shown that he had a Tennessee aggravated, he was convicted of a Class C felony Tennessee aggravated assault conviction. The vast majority of... That's all that the state court judgment said, is that correct? That's all that the judgment says. We do not have the indictment in this case. It's just, it's simply not in the record. But if you look at the Tennessee statute, there are multiple ways that you can commit a Class C felony aggravated assault. The vast majority of those ways, and the most frequently charged type of Class C aggravated assaults, are the ones in subsection A. And those variants of the offense categorically qualify as violent felonies. Subsection A is the one that I would describe as the normal aggravated assault. It's the one where it says that you use force against somebody, you assault somebody and either cause them physical injury or use or display a deadly weapon. This court has pretty consistently said that type of aggravated assault counts under the use of force clause. There are only... You said that the majority of those would qualify under that subsection, which would mean that there are some that would not. And if the court can't look behind at the facts of the case, under our current jurisprudence, what does that do for your argument? Well, the problem here is that to meet his burden, he has to show that his aggravated assault conviction was actually a non-qualifying variant. Because the fact that the majority of Class C aggravated assaults are the subsection A type... Or does he just have to show that without information available to the sentencing court to demonstrate that it was not a residual clause, that the default, if you will, based upon the process that the court has to follow is to get us to the residual clause in the absence of specific information to show that it fell elsewhere? I don't think that's an accurate characterization of the process that the district court was engaged in. So did the district court have that information that you just talked about? The sentencing court here, did the court have that information and make an informed decision based upon the type of conviction? At the time that Mr. Slusser was sentenced, everyone agreed that his prior convictions qualified. And there wasn't a discussion in the sentencing transcript as to which clause they qualified under. And I think here what the district judge did is it appropriately considered the PSR, not for purposes of using it as a shepherd document, which we acknowledge you shouldn't do, but what the district court did in the 2035 proceedings, it looked at the PSR to see, hey, was there any indication in the PSR that would have suggested on what basis we thought this was a violent felony? And the fact that the factual description of the offense in the PSR indicated that it could only have been that A type of aggravated assault, indicated to the district court that we were relying on the use of force clause. We weren't relying on the residual clause when we thought this was a violent felony. And that shows that that in and of itself, I think, is a sufficient basis to affirm the district court's decision here. The district court reasonably looked at the prior record and its job was to determine, has Mr. Slusser shown that it is more likely than not that as his initial sentencing, his sentence was based on the residual clause? The district court looked at the record and said, no, it's not more likely than not it was based on the residual clause. If anything, it's more likely than not that it was based on the use of force clause. And Mr. Slusser has provided no evidence whatsoever to show that it is more likely than not that his prior aggravated assault conviction actually involved a non-qualifying variant. And the only information we have about his conviction, admittedly not from Shepard documents, but the information we have about that conviction are the undisputed facts about it in the PSR. Those undisputed facts indicate that it must have been an A type of aggravated assault. So there's simply, this is a situation where, yes, the Shepard documents do not conclusively show either way. But in this situation, that absence of information weighs against the petitioner because he is the one who has the burden. And the Supreme Court has said, look, when the evidence is in equipoise, the party with the burden loses. I'm certainly happy to address any other questions the court has about these arguments or about burden issues. We have none. All right. Thank you, counsel. So what about that burden, counsel? So starting with the burden, I would say that when it comes to looking to see what actually happened as a historical matter in the district court back in 2005, we don't just throw the burden. We don't suddenly get to start rooting around in the PSR to find out what was in the judge's mind. Speaking of burden, given the burden, what's your client's best argument for saying that his sentence used the category, it could have used, more likely than not, that the categorical, I'm sorry, that the residual clause was the triggering. His best argument was back in 2005 when the district court was deciding whether and how to count this aggravated assault conviction, that under the law at the time, Taylor, the categorical approach, he had to look at the judgment. And when he looked at the judgment, the only thing he could do was assume that Mr. Slusser had committed one of the offenses that only qualified under the residual clause. But that's the way the law operated. The law operated then, as it does now, to require the categorical approach. Okay, he carries his burden by arguing the categorical approach. That is what occurred, particularly when the record is completely silent about what the judge did, then the categorical approach steps into that in order to answer these questions. Otherwise, we have... In this case, it would give your client the benefit of the doubt with respect to whether it was the residual clause or not on which the conviction is counted. Yes, exactly, because I would think we would presume the judge followed the law at the time to look at the Shepard documents, or would have looked at the Shepard documents had this come up and decided that it counted, no matter what, under the residual... PSR, where do you fit that in your argument, that the PSR clearly said it was your basic assault? Well, the PSR doesn't actually tell us what the offense was. The PSR is the representations of the PSR writer. And when we look at these situations, when the judge is making a sentencing decision... There are facts recited, and the sentencing judge, and I believe the record here shows the sentencing judge adopted the PSR. Is that not correct? Was there any objection to those facts? No, there was not. But that doesn't tell us what happened at the time when we're asking Potter asks... If we're looking at the historical thing, we're asking a legal question, which is, what did the judge do at the time? Unless the judge actually says out loud, I am deciding that this counts under the fourth clause, we have a silent record. We look back at the state of the law at the time and what the judge did at the time based on the state of the law. That's how Potter works. And there's nothing in Potter that suggests that information in the PSR can suddenly be transformed to be part of that decision. In fact, I would point out that the Department of its brief in Potter, when it got to that question, said that what we do is we look to see... We can't look at the PSR, and we're looking to see what happened at that time. There's no suggestion that we go in and we look at what the PSR said, and we think that that's what was in the judge's mind at the time, which provision he decided that it fell under. You're taking a breath. Yes. Letting you know that your time is up. I know. Do you have one more thing you want to say? Because the government has launched a brand new argument about why Carruthers doesn't apply, I wanted to explain how this really is a challenge to the statutory maximum and an unconstitutional provision, but I see... Is that in your gray brief? I think it might be. You responded in your gray brief to that argument? The argument is in there, but it's not to the extent that... I'll do a better job here today, but your time is up. Thank you very much. The court thanks you for your argument. It's too bad Mr. Slusser does not realize what benefits he gets from your argument. You do a very nice job, counsel. Thank you. The state does too, of course. Thank you. The court has your matter, and we will take it under advisement and issue an opinion in due course. I believe that the other cases today are submitted on the brief, so we will adjourn court, please. Yes, Your Honor.